MA

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CLIFTON MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11 CV 9271 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Plaintiff Clifton Morgan's Motion for New Trial pursuant to Federal Rule of Civil Procedure 59. For the following reasons, the motion is denied.

### I. BACKGROUND

On May 2, 2011, Defendants Duane De Vries, Christian Tsoukalas, and Anthony Schultz, three City of Chicago Police Officers, arrested Plaintiff Clifton Morgan ("Plaintiff") on the 7700 block of South Greenwood in Chicago. Plaintiff was charged with possession of crack cocaine and resisting arrest. The Circuit Court of Cook County found that the officers arrested Plaintiff without probable cause and dismissed the charges. Following the dismissal, Plaintiff initiated this civil rights lawsuit against the officers and the City of Chicago (collectively, "Defendants") for multiple violations of his constitutional rights under 42 U.S.C. § 1983, as well as state law claims associated with his arrest. The matter proceeded to trial on five claims: (1) Defendants unlawfully stopped Plaintiff; (2) Defendants falsely arrested Plaintiff; (3) Defendants used excessive force against Plaintiff; (4) Defendants conspired against Plaintiff; and (5) Defendants

maliciously prosecuted Plaintiff. On January 22, 2014, the jury returned a verdict in favor of Defendants on all claims.

## II. DISCUSSION

### A.      Standard of Decision

When considering a motion for new trial, "federal law requires a district court to determine 'whether the verdict is against the weight of the evidence . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the [moving party].'" Kapelanski v. Johnson, 390 F.3d 525, 530 (7th Cir. 2004) (quoting EEOC v. Century Broad. Corp., 957 F.2d 1446, 1460 (7th Cir. 1992)). The Court views the evidence "in the light most favorable to the prevailing party" at trial. Id. (citing Carter v. Moore, 165 F.3d 1071, 1079 (7th Cir. 1998)). The moving party bears a heavy burden because "[a] verdict will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." Moore v. Tuleja, 546 F.3d 423, 427 (7th Cir. 2008).

### B.      Motion for a New Trial

Plaintiff moves for a new trial for two reasons. First, Plaintiff argues that Defendants' peremptory challenges to Jurors Seven and Nine were racially-motivated and violated Plaintiff's constitutional right to equal protection. Second, Plaintiff argues that cumulative procedural and substantive errors deprived him of a fair trial.

### 1.      *Plaintiff's Batson claim*

As to Plaintiff's first argument, it is well established that "[t]he use of a peremptory strike to remove a potential juror solely because of his or her race violates the Equal Protection Clause." United States v. Taylor, 636 F.3d 901, 904 (7th Cir. 2011) (citing Batson v. Kentucky, 476 U.S. 79, 91 (1986)); see also Edmonson v. Leesville Concrete Co., 500 U.S. 614, 631 (1991)

2

(applying <u>Batson</u> to civil proceedings). In evaluating a claim that a party removed a potential

juror solely because of race, the Court conducts the familiar three-step inquiry derived in <u>Batson</u>.

<u>Harris v. Hardy</u>, 680 F.3d 942, 949 (7th Cir. 2012); <u>Taylor</u>, 636 F.3d at 904-05. First, the movant

must make a prima facie case of race discrimination. <u>Hardy</u>, 680 F.3d at 949. If this showing is

made, the burden of production shifts to the proponent of the peremptory strike to provide a race-

neutral explanation for the strike. <u>Id.</u> Third, the Court decides whether the movant has proved

purposeful discrimination. <u>Id.</u>

A prima facie case of discrimination may exist when a party "uses peremptory challenges

to eliminate all, or nearly all members of a particular race." <u>Id.</u> at 950 (citing <u>United States v.</u>

<u>Stephens,</u> 421 F.3d 503, 512 (7th Cir. 2005)). A statistical analysis of the venire may be used to

establish a prima facie case of discrimination. <u>Miller-El v. Dretke</u>, 545 U.S. 231, 241 (2005)

(striking ninety-one percent of eligible African American jurors from the venire established a

prima facie case of discrimination); <u>Hooper v. Ryan</u>, 729 F.3d 782, 784 (7th Cir. 2013) (holding

that a prima facie case of discrimination existed when the prosecutor removed all seven African

American jurors from the venire using two challenges for cause and five peremptory strikes);

<u>Hardy</u>, 680 F.3d at 951 (describing the State's exclusion of at least seventy-one percent of

African Americans from the jury as a staggering showing of discrimination). Here, Defendants

removed Jurors Seven and Nine from the venire with their peremptory strikes, equating to fifty

percent or two of the four potential African American jurors. Jurors Six and Nineteen were

African American and were not removed from the venire. While fifty percent is not all or nearly

all, "the burden at the prima facie stage is low, requiring only circumstances raising a suspicion

that discrimination occurred." <u>Stephens</u>, 421 F.3d at 512. Plaintiff meets this low burden, so the

Court continues the <u>Batson</u> analysis to steps two and three.

3

"At the second step, nearly any race-neutral reason will suffice, even those that are arbitrary, irrational, or silly." United States v. Rutledge, 648 F.3d 555, 559 (7th Cir. 2011). However, an absence of any explanation may warrant an additional evidentiary hearing. Id. Here, because the underlying incident occurred on the 7700 block of South Greenwood, Defendants' counsel challenged Juror Seven for cause, explaining that "[s]he has friends in the area" and "the case should be decided by people who have no contact with a particular area or know any of the people who may be involved in the particular case." Transcript of Proceedings at vol. 1, p. 50, Morgan v. City of Chi., No. 11-9271 (N.D. Ill. Jan. 14, 2014). With regard to Juror Nine, Defendants' counsel similarly stated, "she is familiar with the area here, that she has friends and knows people within that area. I think this case should be decided by people that have no familiarity with the area or may have contacts in any way." Id. at vol. 1, p. 49. Defendants' reason for their strikes, the jurors' familiarity with the neighborhood and its residents, was race-neutral. No evidentiary hearing is necessary.

The third step of Batson "requires the district court to make a finding of fact regarding the [proponent's] credibility after the [proponent of the peremptory strike] has offered a race-neutral reason for the strike." Rutledge, 648 F.3d at 555-56. Credibility determinations can be made in many ways, and the Court is well positioned to make this determination. Id. at 558. Here, the Court denied the challenges for cause because there was no indication that the two jurors knew the particular people involved in the case. After Defendants exercised their peremptory strikes on Jurors Seven and Nine, Plaintiff raised a Batson challenge. The Court found that the jurors' "familiarity with the neighborhood and having friends there" was "a sufficient showing of a non-discriminatory basis" for the peremptory challenges. Tr. at vol. 1, p.

51. The Court found Defendants' race-neutral reason to be honest and credible at the time Plaintiff lodged its Batson objection.

Likewise, upon this secondary review, the Court still finds the basis for Defendants' peremptory strikes to be race-neutral and not pretext for discrimination. Plaintiff argues that Defendants' stated reason was merely pretext for racial discrimination because the zip code where the incident took place is over ninety-seven percent African American, according to the 2010 study by the U.S. Census Bureau. As the Seventh Circuit stated in United States v. Briscoe, the Court is "cognizant of the fact that the west side [and other areas] of Chicago [are] predominantly black and that exclusion of jurors based solely on their residence in this area of the city could be a pretext for discrimination." 896 F.2d 1476, 1488-89 (7th Cir. 1990). However, Defendants' statement here, as in Briscoe, "went well beyond a cursory statement that [the juror] resided on the west side of Chicago." In Briscoe, the fact that the juror's address was "geographically close" to the addresses of two of the witnesses was a sufficient race-neutral reason to exercise a peremptory strike. Id., at 1488-89. Briscoe is analogous to the instant case because Defendants provided a race-neutral reason for their peremptory challenge—the jurors lived geographically close to where the underlying incident occurred. It is a legitimate race-neutral reason that the jurors' preconceived notions about the area might result in bias, thereby compromising their ability to be fair.

Furthermore, the persuasiveness and credibility of Defendants' justification for his peremptory strike is bolstered by a comparison of the members of the venire. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." Miller-El, 545 U.S. at 241. Here, a comparison of similarly-

situated jurors who were permitted to serve on the venire belies Plaintiff's claim of purposeful racial discrimination. When Juror Seven was asked about "the 7700 block of Greenwood in the City of Chicago" and if she was "familiar at all with that area," she said, "Yes, I am...I live not far away." Tr. at vol. 1, p. 44. When asked about the same area, Juror Nine responded, "I know the area;" she went on to explain that she had "a couple friends that live in that area." Id. at vol. 1, p. 45. Potential Jurors Six and Nineteen were African American, but they did not live geographically close to where the incident occurred, so they were selected for the jury without objection by Defendants. Juror Six lived in Waukegan and Juror Nineteen lived on the west side of Chicago. Jurors Ten and Seventeen were nonblack jurors who lived in Chicago, but they gave no indication that they were familiar the area where the incident occurred. All the remaining jurors lived outside Chicago in various suburban municipalities. A familiarity with the area only applied to the two panelists that were stricken. Therefore, the other members of the venire were not otherwise-similar to Jurors Seven and Nine and there is no evidence tending to prove purposeful discrimination.

A proponent of a peremptory strike "'simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives,'" initially, not after the fact. Taylor, 636 F.3d at 905 (quoting Miller-El, 545 U.S. at 252). The Court finds that Defendants' reasons for its peremptory strikes, at the time they were initially challenged are credible, honest, and race-neutral; therefore Defendants' peremptory strikes do not violate the Equal Protection Clause.

### 2.      *Plaintiff's Allegations of the Court's Procedural and Substantive Errors*

Next, Plaintiff argues that he was denied a fair trial because the Court erred seven times, either procedurally or substantively, over the course of the trial. Specifically, Plaintiff argues that

6

the Court erred when it: (1) did not hold a pretrial conference to rule on motions in limine; (2) sustained Defendants' objections during opening and closing arguments; (3) did not tell the parties how many jurors would be selected for trial; (4) admitted erroneous character evidence; (5) allowed Defendants to present testimony regarding the probable cause to arrest Plaintiff; (6) allowed Defendants to submit new jury instructions after the close of evidence; and (7) responded to the jury's question about how the law defines reasonable suspicion. Plaintiff contends that the cumulative effect of the Court's seven rulings deprived him of a fair trial. Christmas v. City of Chi., 682 F.3d 632, 643 (7th Cir. 2012). To reach that conclusion, Plaintiff must show "'(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered his trial fundamentally unfair.'" Id. (quoting United States v. Powell, 652 F.3d 702, 706 (7th Cir. 2011)).

Before proceeding to the merits, the Court notes that Plaintiff's arguments regarding several instances of its alleged indiscretion do not require discussion because the arguments are unsupported by pertinent authority. Massuda v. Panda Exp., Inc., No. 13-2818, 2014 WL 3566419 at *4 (7th Cir. July 21, 2014) ("'We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived'" (quoting United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991)). Here, Plaintiff fails to support his arguments with any authority regarding the Court's alleged errors numbered above as (1), (2), (4), and (5). Plaintiff includes no citation to the Federal Rules of Civil Procedure, no citation to the Federal Rules of Evidence, no citation to any statutes, and no citation to any binding authority. The Court deems Plaintiff's arguments regarding these four instances as only conjecture and declines to discuss them any further. Thus, the Court reviews only the remaining three alleged errors, (3), (6), and (7).

Regarding the third alleged error, Plaintiff does not cite a procedural rule, but relies on Swain v. Alabama, 380 U.S. 202, 219 (1965), and United States v. Underwood, 122 F.3d 389, 392 (7th Cir. 1997), to argue that the Court abused its discretion when it did not tell the parties how many jurors would be seated for the trial. A jury in a civil case must start with "at least 6 jurors and no more than 12 members." Fed. R. Civ. P. 47. Plaintiff appears to argue that not knowing the exact number of jurors deprived him of his opportunity to effectively exercise his peremptory challenges during voir dire. Plaintiff's reliance on Swain and Underwood is misplaced. These cases are appeals from criminal trials and have little bearing on the selection of a venire in a civil case, such as this. Additionally, Swain and Underwood have both been overruled. See Batson, 476 U.S. at 96 (overruling Swain); see also United States v. Patterson, 215 F.3d 776, 780 (7th Cir. 2000) ("Underwood is no longer authoritative after [United States v. Martinez-Salazar, 528 U.S. 304, 316 (2000)]").

"There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges to defendants in criminal [or civil] cases; trial by an impartial jury is all that is secured." Stilson v. United States, 250 U.S. 583, 586 (1919). Plaintiff, however, is entitled to unlimited challenges for cause, and by statute, he is entitled to three peremptory challenges in a civil case. 28 U.S.C. § 1870; see also Fed. R. Civ. P. 47. Here, Plaintiff used two peremptory challenges and the jury was composed of ten members. Furthermore, Plaintiff's claim must fail because he did not exhaust his peremptory challenges and has not shown that the jury was impartial. Martinez-Salazar, 528 U.S. at 316. There was no error in the selection of the jury.

Next, with respect to the sixth alleged error, Plaintiff argues that the jury instructions tendered by Defendants at the close of evidence were untimely under Rule 51(a)(2)(A).

8

Plaintiff's argument disregards Rule 51(a)(1) which states: "At the close of the evidence or at any earlier reasonable time that the court orders, a party may file and furnish to every other party written requests for the jury instructions it wants the court to give." Fed. R. Civ. P. 51(a)(1) (emphasis added). Furthermore, Plaintiff's argument fails because he does not contend that he was prejudiced by the jury instructions. Johnson v. General Bd. of Pension & Health Benefits of United Methodist Church, 733 F.3d 722, 732 (7th Cir. 2013).

Finally, Plaintiff argues that the Court's response to the jury's question "regarding the investigatory stop" was improper. Specifically, the jury's note asked "what must the officers have been reasonably suspicious of." Tr. at vol. 1, p. 664. The Court provided a three sentence explanation composed of Seventh Circuit progeny from Terry v. Ohio, 392 U.S. 1 (1968), the defining case of an investigatory stop. The first sentence is from United States v. Bullock, 632 F.3d 1004, 1014-15 (7th Cir. 2011), the second sentence derives from Cady v. Village of McCook, 57 Fed.App. 261, 264 (7th Cir. 2003), and the third sentence hails from United States v. Riley, 493 F.3d 803, 809 (7th Cir. 2007) (quoting United States v. Cortez, 449 U.S. 411, 419 (1981)). Tr. at vol. 1, p. 667. Plaintiff argues that the Court's response was not an accurate statement of the law and should have included only the following instruction: "Although an officer does not need probable cause to conduct an investigatory stop, the brief detention must be based on reasonable suspicion that the stopped individual has or is about to commit a crime." Bullock, 632 F.3d at 1012. Plaintiff attempts to bolster his argument with the fact that Defendants agreed to the use of this same sentence. However, the Court is not bound by the parties' stipulations when it comes to instructing the jury on the law. The Court exercised its "'substantial discretion with respect to the precise wording of jury instructions'" and provided

9

the jury with a "complete and correct statement of law." United States v. Matthews, 505 F.3d 698, 704 (7th Cir. 2007) (quoting United States v. Darif, 446 F.3d 701, 709 (7th Cir. 2006)).

Individually or cumulatively, the alleged procedural and substantive errors that Plaintiff complains of did not render the trial fundamentally unfair to him.

### III. CONCLUSION

Given the manifest weight of the evidence, Plaintiff's arguments that he received a fundamentally unfair trial are meritless. Mejia v. Cook County, Ill., 650 F.3d 631, 635 (7th Cir. 2011)) ("In the end, the district court is in the best position to evaluate the evidence and determine whether the verdict was against the manifest weight; it heard the witnesses testify, saw the evidence presented, and gained a better appreciation of the nuances of the case than could be gleaned from a cold, written record.") (citations omitted). Accordingly, Plaintiff's motion for a new trial is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 18, 2014